**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| KENNETH TAYLOR | CIVIL ACTION NO. 24-0882 |
| VERSUS | JUDGE ALEXANDER C. VAN HOOK |
| STATE FARM FIRE & CASUALTY CO. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

State Farm Fire & Casualty Co. ("State Farm") issued a homeowner's insurance policy to Kenneth Taylor ("Taylor") covering a multi-story townhouse in Shreveport. After a freezing weather event, a pipe burst in the attic causing water to leak throughout the home. Taylor filed an insurance claim, but State Farm denied coverage based on a policy term that required Taylor to exercise reasonable care to maintain heat in the house at 55 degrees or higher. Because Taylor has produced sufficient evidence to demonstrate a genuine dispute of material facts exists, summary judgment is denied.

## Background

Taylor, originally from Shreveport but living in California, purchased a townhouse on Tealwood Street and planned to return after completing renovations. Record Document 24-5 at 10-11, 17. Because he did not live in Shreveport, Taylor relied on locals to check on his townhouse. However, the parties dispute who had access to the townhouse and how often they inspected it. *See, e.g.*, Record Document

24-1 at 21 ("The investigation revealed conflicting accounts regarding access to the property and its maintenance[.]").

In his deposition, Taylor testified that three Shreveporters had keys to the townhouse: his realtor, Mina Mann ("Mann"), his handyman, Raymond George ("George"), and the homeowner's association president, Bessie Rosenfield ("Rosenfield"). Record Document 24-5 at 22-24. Taylor could not identify how regularly any person visited the townhouse other than periodic inspections when he had a contractor working on the property or to "check the mail." *See, e.g.*, *id.* at 36-37. Meanwhile, George described his visits as much more regular. According to George, he inspected the townhouse "once or twice a week" by walking through the house. Record Document 24-6 at 25. During his visits in the winter, George said that he "made sure the heater's on and working." *Id.* at 32. George also testified that he checked that the thermostat "was on the right temperature" and always set it to "around 70 degrees" during his visits. *Id.* at 32-33.

To protect his home, Taylor purchased an insurance policy from State Farm. Record Document 24-2 at 7. The policy addressed coverage for damage resulting from a frozen pipe:

### SECTION I – LOSSES NOT INSURED

1. **We** will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

   a. collapse, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES**, **Collapse**;

   b. freezing of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or of a household appliance; or discharge, leakage, or overflow from within the system or appliance caused by freezing. This does not apply if **you** have used reasonable care to:

      (1) maintain heat in the **building structure** at 55 degrees Fahrenheit or higher; or

      (2) shut off the water supply and drain the system and appliances of water.

14                                                                                            HW-2118
© Copyright, State Farm Mutual Automobile Insurance Company, 2018

2

*Id.* at 13. In other words, State Farm obligated itself to cover damage from a frozen pipe if Taylor "used reasonable care to maintain heat in the building structure at 55 degrees Fahrenheit or higher[.]" *Id.* (internal numbering omitted). There is no dispute that the insurance policy remained active at all relevant times. *See* Record Document 24-1 at 13.

On January 18, 2024, after a winter freeze, Taylor learned that a neighbor found water leaking into his unit from Taylor's townhouse. Record Document 24-5 at 43. Taylor contacted his handyman, George, to investigate. *Id.* at 45. George entered the townhouse finding it cold and "flooded" with "water everywhere." Record Document 24-6 at 38, 75-76. To mitigate the damage, George turned off the townhouse's thermostat, water, and power supply. *Id.* at 52-54.

The following day, Taylor filed a claim with State Farm. Record Document 24-4 at 14. Within two days, State Farm investigated the claim and inspected the townhouse. *Id.* at 5-11. The parties also dispute what occurred during State Farm's investigation. According to State Farm, Taylor told a State Farm representative that he had set the thermostat to "zero degrees" and had "everything turned off." Record Document 24-1 at 7. During its inspection after the damage, State Farm "confirmed" that the thermostat had a temperature reading of 41 degrees and had been set to "off." *Id.* State Farm then denied Taylor's claim. Record Document 24-4 at 7-8.

In the days after State Farm's denial, Taylor communicated with State Farm regularly. *See, e.g.*, Record Document 24-4 at 5. Taylor insisted that State Farm had misunderstood his response and informed State Farm that he did not turn off power

3

until after the damage. *Id.* Taylor also gave State Farm his utility bill that showed electric use in the townhouse before the damage. *Id.* In response, State Farm did not reconsider its denial and told Taylor his protests were "too late now." Record Document 24-5 at 54. This lawsuit followed.

## Standard

Federal Rule of Civil Procedure 56(a) requires a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When the burden at trial will rest on the nonmovant, the movant need not produce evidence to negate the elements of the nonmovant's case; rather, it need only point out the absence of supporting evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant satisfies its initial burden, the nonmovant must demonstrate a genuine dispute exists by "going beyond the pleadings" and "designating specific facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). This burden requires more than metaphysical doubt, conclusory or unsubstantiated allegations, or a mere scintilla of evidence. *Id.*

## Analysis

In his complaint, Taylor alleged that State Farm breached their insurance policy when it denied his claim for damages. Record Document 1 at 7. Taylor also asserted that State Farm's failure to pay had been arbitrary, capricious, and without probable cause and violated its statutory duty of good faith and fair dealing. *Id.* State

4

Farm has moved for summary judgment on both causes of action. Record Document 24.

## I.    Breach of contract

In a diversity case, like this one, federal courts apply state substantive law. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007). "Under Louisiana law, an insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Id.* When a policy is clear and unambiguous, "the insurance contract must be enforced as written." *Id.* at 204. An insurer breaches its insurance contract when it fails to pay a claim for covered damages. *See also Louque v. Allstate Ins. Co.*, 314 F.3d 776, 782 (5th Cir. 2002) (noting that "[t]o state a claim for breach of an insurance contract under Louisiana law, a plaintiff must allege a breach of a specific policy provision.").

In its motion for summary judgment, State Farm argued that the insurance policy did not cover Taylor's damage from a frozen pipe. Record Document 24-1 at 15. The policy provided coverage only if Taylor exercised reasonable care to maintain heat at 55 degrees or higher. *Id.* at 15-16. According to State Farm, Taylor did not maintain the heat because Taylor had not visited the townhouse in two months, and he didn't know when or how often the locals checked on it. *Id.* at 16. State Farm also argued that George's testimony that the townhouse had been "30 something degrees" during his inspection confirmed that the heat had not been maintained. *Id.* But the Court is not persuaded.

A genuine dispute exists whether Taylor exercised reasonable care to maintain the townhouse's heat above 55 degrees. First, Taylor testified that he set the thermostat to a temperature between 60 and 65 degrees before he left the townhouse two months earlier. Record Document 24-5 at 30. This fact alone, especially when viewed in a light most favorable to Taylor, would preclude summary judgment. *Nat'l Ass'n of Gov't Emp. v. City Public Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994) ("We consider all evidence in the light most favorable to the nonmoving party."). Second, George testified that he also maintained the heat above the level required in State Farm's insurance policy. George said that he inspected the house "once or twice a week" when Taylor was not home. Record Document 24-6 at 25. During those inspections, George said that he "made sure the heater's on and working" and set the thermostat "between 60 and 70 [degrees]." *Id.* at 32. Although State Farm tried to discredit George's testimony, at the summary judgment stage, the Court does not "evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021); *see, e.g.*, Record Document 24-1 at 17. Therefore, summary judgment for the breach of contract claim is denied.

## II.  Bad faith

Louisiana imposes a duty of good faith and fair dealing on insurers. La. Stat. Ann. § 22:1892 ("An Insurer…owes its insured a duty of good faith and fair dealing."). To establish a bad faith claim, the insured "must show that (1) an insurer has received satisfactory proof of loss, (2) the insurer failed to tender payment within thirty days

of receipt thereof, and (3) the insurer's failure to pay is arbitrary, capricious or without probable cause." *Guillory v. Lee*, 16 So.3d 1104, 1126 (La. 2009). An insurer does not act arbitrarily or capriciously when a genuine dispute over coverage or amount of loss exists. *Kodrin v. State Farm Fire & Cas. Co.*, 314 F.App'x 671, 679 (5th Cir. 2009).

State Farm argued that the bad faith statute does not apply because it had a reasonable basis to defend against Taylor's claim. Record Document 24-1 at 21. According to State Farm, it had a reasonable belief that Taylor did not maintain the heat at 55 degrees because Taylor had not visited the townhouse for two months, and its investigation "revealed conflicting accounts regarding access to the property and its maintenance[.]" *Id.* Once again, the Court is not persuaded.

A genuine dispute exists whether State Farm had a reasonable belief that Taylor failed to maintain the heat. *See First Baptist Church of Iowa, La. v. Church Mut. Ins. Co.*, 105 F.4th 775, 795 (5th Cir. 2024) (holding that bad faith "penalties should be imposed only when the facts negate probable cause for nonpayment, not when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense."). Originally, State Farm denied coverage based on an alleged miscommunication between Taylor and a State Farm representative. According to State Farm, it denied the claim after Taylor told a representative that the thermostat had been turned off and set to zero degrees before the damage occurred. Record Document 24-1 at 7. State Farm then confirmed during its inspection that the thermostat had been switched off. *Id.* However, Taylor tried to

7

correct State Farm's mistaken belief early in the investigation. Taylor told State Farm that he set the thermostat above 55 degrees and provided utility bills to corroborate his account. Record Document 24-4 at 5. George also spoke to State Farm representatives and told them about his regular inspection of the house and thermostat. *See id.* at 80-81. When viewed in a light most favorable to Taylor, the evidence proves that State Farm did not have a reasonable basis for nonpayment. As such, summary judgment on the bad faith claim is denied.

**DONE AND SIGNED** at Shreveport, Louisiana, this 7th day of May, 2026.

ALEXANDER C. VAN HOOK
UNITED STATES DISTRICT JUDGE